# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BOBBY L. HURST,

    Plaintiff,

v.

KENOSHA COUNTY JAIL, SHERRIF DAVID BETH, and JOHN DOE,

    Defendants.

Case No. 18-CV-406-JPS

**ORDER**

  Plaintiff, Bobby L. Hurst, filed a *pro se* complaint on March 14, 2018, alleging that his civil rights were violated during a period of incarceration at the Kenosha County Jail in September 2017. (Docket #1). Plaintiff was released from incarceration on March 7, 2018, and now lives at a private residence in Kenosha, Wisconsin. Before the Court is Plaintiff's motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Docket #2). It should be noted that although Plaintiff seeks redress for conduct that occurred while he was incarcerated, because he filed the case when he was not incarcerated, he is not subject to the provisions of the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A. *Olivas v. Nevada ex rel. Dep't of Corr.*, 856 F.3d 1281, 1284 (9th Cir. 2017) (the PLRA only applies when the plaintiff is a prisoner at the time he files the complaint).

  In order to allow a non-prisoner plaintiff to proceed without paying the filing fee, the Court must first decide whether the plaintiff has the ability to pay the filing fee and, if not, whether the lawsuit is frivolous or fails to state a viable claim. 28 U.S.C. §§ 1915(a), (e)(2)(B). On the first question, although the plaintiff need not show that he is totally destitute, *Zaun v.*

*Dobbin*, 628 F.2d 990, 992 (7th Cir. 1980), it must be remembered that the privilege of proceeding *in forma pauperis* "is reserved to the many truly impoverished litigants who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them," *Brewster v. N. Am. Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir. 1972).

It is difficult for the Court to assess Plaintiff's request to proceed *in forma pauperis* at this time. This is because, although he is treated as a non-prisoner for purposes of this inquiry, he has submitted the form used by prisoners for seeking *in forma pauperis* status. (Docket #2). That form contains only some of the information the Court needs to assess Plaintiff's financial circumstances. Importantly, while the form asks questions about Plaintiff's employment, income, dependents, and assets, all of this is focused on those matters as they stood while he was incarcerated. If things have changed since his release, Plaintiff has not reported them.

Nevertheless, the Court will accept from Plaintiff's submissions that he is disabled, has no assets or employment, and has a minor son that he supports. On those averments, the Court will grant him leave to proceed *in forma pauperis*.

However, notwithstanding the finding of indigence, the Court must dismiss any complaint or portion thereof if it has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an

indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In considering whether a complaint states a claim, courts should first "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. If there are well-pleaded factual allegations, the court must then "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Court is obliged to give a plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Here, Plaintiff alleges that he was moved into isolated confinement in the health services unit ("HSU") at the Kenosha County Jail on September 8, 2017 because he had a "contagious eye condition." (Docket #1 at 5). However, later that same day, he was transferred to a "punitive, disciplinary solitary confinement" unit, labelled X-5. *Id.* His cell in X-5 was Spartan, with only a bunk and sink/toilet, whereas the HSU cell was much more comfortably arrayed, with a sink/toilet, shower, desk, phone, television, and enough room to exercise. *Id.*

Plaintiff was housed there for four days, until September 12, 2017. *Id.* During this time, he consistently complained about not being provided hygiene supplies as required by Wisconsin regulation and questioned why he was placed in punitive segregation without a finding of some offense. *Id.* One officer offered to look into it, but he never followed up with Plaintiff. *Id.* at 5–6. At one point, another officer told Plaintiff that he was moved simply because HSU staff needed the room he was in. *Id.* Plaintiff asserts that it was a violation of his constitutional rights for him to be transferred from a non-punitive, isolated administrative confinement in the HSU to a punitive, disciplinary, solitary confinement in the X-5 housing unit, without a charge or offense and without a prior hearing or other process. *Id.* at 6.

The Fourteenth Amendment protects an individual against deprivation of life, liberty, or property without due process of law. U.S. Const. Amend. XIV. "Those who seek to invoke [the Fourteenth Amendment's] procedural protection must establish that one of those interests is at stake." *Wilkerson v. Austin*, 545 U.S. 209, 221 (2005). An inmate's liberty interest is not affected unless the conditions of his confinement impose an "atypical and significant hardship. . .in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484

(1995). Notably, "[i]nmates have no liberty interest in avoiding transfer to discretionary segregation—that is segregation for administrative, protective, or investigative purposes." *Id.* This is because discretionary, or administrative, segregation is not considered "atypical," but rather an "ordinary incident of prison life" that prisoners should anticipate during their time in prison. *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008). Further, "even extremely harsh prison conditions may not be so 'atypical' as to create the liberty interest the [Supreme] Court contemplated." *Id.*

Here, Plaintiff's transfer to the X-5 housing unit, even though it was less comfortable than his HSU cell, did not implicate any liberty interest. He was only housed in X-5 for four days, and the Seventh Circuit has found that similarly harsh conditions could be endured for up to ninety days without affecting an inmate's liberty interest. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697–98 & n.2 (7th Cir. 2009); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005). Moreover, it does not matter that Plaintiff had done nothing wrong, since he concedes that the transfer was done merely to open up room for others in the HSU. Temporary administrative transfer is not atypical in a prisoner's life. *Townsend*, 522 F.3d at 771.

Plaintiff is akin to the inmate in *Earl v. Racine County Jail*, 718 F.3d 689, 691–92 (7th Cir. 2013), whose liberty was not offended by being placed on suicide watch for five days, despite the fact that suicide watch involved strict limitations on what the inmate could possess, a demeaning "suicide-proof gown," being served meals on Styrofoam trays, being kept in in continuous light for the first 24 hours, and being constantly monitored. The Court of Appeals said that these conditions, which are no more severe than what Plaintiff suffered, were "not unusually harsh." *Id.* at 691. Moreover, the Seventh Circuit noted that the suicide watch was simply too brief to

(1995). Notably, "[i]nmates have no liberty interest in avoiding transfer to discretionary segregation—that is segregation for administrative, protective, or investigative purposes." *Id.* This is because discretionary, or administrative, segregation is not considered "atypical," but rather an "ordinary incident of prison life" that prisoners should anticipate during their time in prison. *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008). Further, "even extremely harsh prison conditions may not be so 'atypical' as to create the liberty interest the [Supreme] Court contemplated." *Id.*

Here, Plaintiff's transfer to the X-5 housing unit, even though it was less comfortable than his HSU cell, did not implicate any liberty interest. He was only housed in X-5 for four days, and the Seventh Circuit has found that similarly harsh conditions could be endured for up to ninety days without affecting an inmate's liberty interest. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697–98 & n.2 (7th Cir. 2009); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005). Moreover, it does not matter that Plaintiff had done nothing wrong, since he concedes that the transfer was done merely to open up room for others in the HSU. Temporary administrative transfer is not atypical in a prisoner's life. *Townsend*, 522 F.3d at 771.

Plaintiff is akin to the inmate in *Earl v. Racine County Jail*, 718 F.3d 689, 691–92 (7th Cir. 2013), whose liberty was not offended by being placed on suicide watch for five days, despite the fact that suicide watch involved strict limitations on what the inmate could possess, a demeaning "suicide-proof gown," being served meals on Styrofoam trays, being kept in in continuous light for the first 24 hours, and being constantly monitored. The Court of Appeals said that these conditions, which are no more severe than what Plaintiff suffered, were "not unusually harsh." *Id.* at 691. Moreover, the Seventh Circuit noted that the suicide watch was simply too brief to

trigger due-process concerns, even if it was severe. *Id.* Plaintiff's claim fails for these same reasons. Consequently, the Court finds that Plaintiff has not stated a viable federal claim and his case must be dismissed.[1]

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Docket #2) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) for failure to state a claim; and

**THE COURT FURTHER CERTIFIES** that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3) unless the plaintiff offers *bona fide* arguments supporting his appeal.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 26th day of March, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

---

[1] Plaintiff includes reference to the Wisconsin state constitution in his complaint (Docket #1 at 6), but this Court has no subject-matter jurisdiction over a claim arising under state law, brought by one state resident against another. He may pursue that claim in state court if he can.